## THE RYGJA.

### A/S J. LUDWIG MOWINCKELS REDERI et al v. MUNSON S. S. LINE et al.

District Court, S. D. New York.
April 4, 1934.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and W. Parker Sedgwick, both of New York City, of counsel), for libelants.

Bigham, Englar, Jones & Houston, of New York City (Herbert Prem, of New York City, of counsel), for Chaparra Sugar Co.

Irving L. Evans, of New York City, for Munson Steamship Line.

CAFFEY, District Judge.

There are some novel features here. These arise especially out of the Cuban law and decree, which seem to have been designed to protect local interests from liability, as well as to regulate the relations between laborers and their employers. The type of statute is entirely outside the range of my previous experience.

A number of general principles of law have been invoked. Apparently there is little dispute between counsel as to what they are. The difficulties are which apply and how to apply them to the facts.

Much of the testimony is undisputed. A great many of the facts are very clear. We reach a stage in the case, however, where there is sharp conflict. The testimony on the points most in controversy has been taken wholly, or almost wholly, by deposition. We have not had the advantage of seeing or hearing the witnesses. We are, therefore, without the assistance of that means for determining their credibility or the weight to be attached to what they say. In consequence, we must resort to the reasonableness with which they testify and to what they tell us by way of description of themselves. We must then view the evidence in the light of all the circumstances and of the probabilities. In no other available way can we properly appraise the statements of particular witnesses.

In the depositions, as well as throughout the trial, a good many terms different in form have been employed to describe the same things. What are called cargo slings are sometimes referred to as rope slings. What are called beam slings are sometimes referred to as wire slings. Perhaps in the course of my remarks I shall use both sets of expressions.

For the moment I shall disregard the Cuban law. I shall come back to it and comment on it later.

I find the facts as follows:

1. The ship Rygja was injured at Puerto Padre, Cuba.

2. The injuries to the ship resulted from the falling of a hatch beam into the hold at hatch 1.

3. The damages to the libelant in consequence include expenses incident to the detention at Puerto Padre; also expenses of repairs and detention at New York.

4. The falling of the beam through the hatch into the hold was directly and proximately caused by negligence of the stevedores.

5. At the time the stevedores were employed to load the ship with sugar and they were engaged in removing the hatch beam at hatch 1 in preparation for passing the sugar through the hatch for stowage below.

6. The negligence of the stevedores consisted of, first, not using a wire sling to hoist the beam, and, second, using a rope sling to hoist the beam or failure, when they used it, to pass it through a hole in the beam or to employ any other device or method for se-

curely attaching it to the beam so as to conduct the hoisting operation.

7. All the hatch beams on the ship were provided with holes to be used in making a secure attachment to the slings while they were being hoisted.

8. The hatch beam with which we are concerned. and the other hatch beams on the ship were each larger towards the middle and tapered off toward each end.

9. The hatch beams each had holes through them, one near the center, at the point that was widest, and others out toward each end of the beam.

10. The shape of the hatch beams, wide near the central portion and tapering out to the ends, was such that there was danger of slipping during the hoisting operation if a rope or other form of sling were merely tied. around it and there was failure to pass the rope or the wire or the hook, or whatever the device might be, through the hole or holes provided for the purpose of secure attachment to the hoisting apparatus.

11. In this case a rope sling was employed as the sole means of attaching the beam at hatch 1 to the hoisting apparatus.

12. The rope was merely passed around the beam and was not passed through a hole in the beam or otherwise.

13. The beam fell into the hold at hatch 1 because of failure securely to attach it to the device by which the stevedores were engaged in the effort to hoist it so as to prepare the opening of the hatch through which to pass the sugar into the hold of the ship below.

14. The ship was provided with two beam slings which were of wire.

15. One of the beam slings had chains at the ends, which were adequate to be employed to fasten the beams securely to the hoisting apparatus by being passed through the holes in the beam. The other of the beam slings was provided with hooks at the ends, which likewise were adequate for securely attaching the hoisting arrangement to the beam for the purpose of doing the hoisting operation.

16. The two beam slings each were sufficient in kind for the safe conduct of the hoisting operation.

17. The two beams were sufficient in number to conduct the hoisting operations on a ship of the type of the Rygja.

18. The hoisting of the hatch beams was conducted by the respondent sugar company.

19. While so engaged, the sugar company was under the employment of and was the agent of the respondent Munson Line.

20. The hoisting was in charge of the servants of the sugar company.

21. The hoisting was being supervised either by Pena, the marine superintendent of the sugar company, or by a gang foreman for the stevedores designated by Pena, the marine superintendent, in charge at each of the hatches and in charge at hatch 1 in the conduct of the hoisting operation.

22. The hoisting was not in the control or under the direction of officers or crew of the ship.

23. The arrangement for the loading of the vessel, as between the Munson Line and the sugar company, was made wholly within Cuban territory.

24. As between the Munson Line and the sugar company, the tariff prescribed by or pursuant to action of the public authorities in Cuba governed at the time of the loading.

25. At the time of the occurrence by which the ship was injured, in October, 1930, decree No. 264, substantially in words as pleaded in the ninth paragraph of the answer of the sugar company, was in effect at the port of Puerto Padre.

26. Under the terms of the decree, as between the Munson Steamship Line and the sugar company, while on the ship and engaged in the loading or in preparation incident to the loading of the ship, including the removal of the beams from the hatches for the purpose of effecting the loading, and while hoisting the beams from the hatches for that purpose, the stevedores were the employees of the Munson Line.

27. As between the libelant and the respondents, the sugar company was the agent of the Munson Line in conducting the hoisting of the beam at hatch 1 and in the other loading operations.

As conclusions of law I find as follows:

I. The ship was seaworthy at the time she was injured.

II. There was no fault, on the part of the ship or her owners, contributing to the injury through lack of proper equipment of the ship for hoisting the beams.

III. The Munson Line is liable to the libelant for the damages flowing from the accident.

IV. Unless the Cuban law exempts the sugar company, it also is liable to the libelant for the damages suffered from the accident.

V. Unless the Cuban law brings about a different result, the sugar company is primarily liable and the Munson Line is secondarily liable for these damages.

VI. The Cuban law, including decree 264, has no effect whatever upon the contract arrangement between the libelant and the charterer, the Munson Line.

VII. The arrangement between the Munson Line and its agent, the sugar company, for the loading of the ship having been effected wholly within Cuban territory, it is affected by and subject to Cuban law in force at the time.

VIII. As between the Munson Line and the sugar company, the provisions of decree 264 exempt the sugar company from liability as between itself and the Munson Line.

IX. Such provisions also have the effect, if there be liability to the libelant by the sugar company, of rendering it secondary to the liability of the Munson Line to the libelant and of imposing primary liability upon the Munson Line.

X. Such provisions also wholly exempt the sugar company from liability to the libelant.

If I be right in treating the liability of the Munson Line as primary, it may be merely academic to consider whether or not the sugar company is secondarily liable. I entertain some doubt of the sufficiency of the Cuban law as a complete defense for the sugar company. I feel, however, that the weight of argument sustains the view that the defense is good.

I see no occasion to go into the question as to whether or not the sugar company was an independent contractor. Under the facts, the rights of the libelant, as between itself and the Munson Line, are governed by the charter party. Upon the issue of its liability to the libelant, it is not of the slightest consequence to the libelant what arrangement the Munson Line made with the sugar company, which was the so-called independent contractor. As I see the matter, there is not a shadow of basis for holding that, so far as concerned and affected the libelant, there was any employment by it of the sugar company independently or otherwise. The libelant relied, and it had a right to rely, on the charter party for protection. The charter party is a contract which was made in the United States. Its terms remained continuously in full effect. In no respect were they modified by Cuban law or by anything which happened in Cuba.

Under the charter party the libelant was entitled to have the vessel returned in good order and condition, reasonable wear and tear excepted. Whether the injury suffered by the vessel was inflicted by the Munson Line through its own direct employees or by some one else as its agent or by some one else with whom it contracted independently, as I see it, is immaterial and does not alter the rights of the libelant under the charter party or diminish, as between itself and the respondents, the liability of the charterer.

I think it is only fair to add that I regard the state of the Cuban law at the port of Puerto Padre as imposing a great hardship on the Munson Line. Nevertheless, that does not change the law to be administered in this court. If people do business in a foreign port, under conditions which render them subject to laws there prevailing, even though such laws be irrational, as I see it there is no help for them when they come to have measured their rights under charter parties.

The result, therefore, is that there will be a decree for the libelant as against the Munson Line, with the usual provision for appointment of a commissioner to report on the damages, and that the libel will be dismissed as against the sugar company.